HENRY I. HAGENBUCH *et al.*, Plaintiffs-Appellants, v. MABEL M. CHA-
PIN *et al.*, Defendants-Appellees.

Third District No. 3—85—0458

Opinion filed November 6, 1986.—Rehearing denied December 18, 1986.

George C. Hupp, Jr., of Hupp, Lanuti, Irion & Martin, P.C., of Ottawa, for appellants.

Louis Olivero, of Peru (Gary W. Wangler, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

The matter before us concerns a dispute over the sale by auction of defendants' farm. The notice of public auction advertising the sale described the real estate as:

"Choice farmland *** consisting of 129 acres—more or less ***.

The South Half of the Northwest Quarter of Section 10 and the North 70 Acres of the Southwest Quarter of said Section 10, all in Township 34 North, Range 2 Third Principal Meridian, excepting however, the South 26-⅔ rods of the East 120 rods of the North 70 Acres of the Southwest Quarter of said Section 10 and excepting the North 230 feet of the West 190 feet of the South Half of the Northwest Quarter of Section 10, consisting in all 129 acres, more or less, in La Salle County, Illinois."

Among the terms of sale listed in the announcement which are relevant to this action were: "2. Bids to be submitted on a per acre basis. *** 8. Survey will not be provided. [and] 9. Possession to be delivered on date of closing." On the date of the auction, October 29, 1983, plaintiffs' high bid of $2610 per acre was accepted. An agreement for warranty deed was executed by the parties accordingly. The agreement set forth the computation of the sale price as "$2610.00 per acres x 129 acres = $336,690.00."

Prior to the December 3, 1983, closing, plaintiffs questioned the acreage and demanded that the purchase price be corrected to reflect a deficiency. It does not appear that the amount of such deficiency was known by either party at this point. In any event, the defendants refused the demand but ordered a survey to be conducted. The sale was closed as scheduled. The warranty deed delivered on December 3, 1983, described the property in question as:

"The South Half of the Northwest Quarter of Section 10 and the North 70 acres of the Southwest Quarter of said Section 10, all in Township 34 North, Range 2, East of the Third Principal Meridian, EXCEPTING however, the South 26-2/3rds rods of the East 120 rods of the North 70 acres of the Southwest Quarter of said Section 10, and EXCEPTING the North 230 feet of the West 190 feet of the South Half of the Northwest Quarter of said Section 10, subject to any and all easements and restrictions of record, all being situated in the County of La Salle, in the State of Illinois, containing 129 acres, more or less."

On December 29, 1983, the survey ordered by defendants was completed. The survey established that, in fact, there were only 127.143 acres within the legally described boundaries of the farm, and that uneven fence lines over the years and a deed overlap resulted in a further deficiency of about four acres in the total area of the farm conveyed.

On April 5, 1984, plaintiffs filed a complaint in the circuit court of La Salle County praying for damages for the deficiency in acreage conveyed. Defendants answered. Thereafter, both parties moved for summary judgment. At the hearing on the motions, the parties agreed that the sole issue was whether the sale of the farm was "in gross" or "by the acre." On June 20, 1985, the court found that "the actual number of acres delivered in the possession of the plaintiffs was 122.97, that there is no question of fraud or fraudulent misrepresentation, [and] that the sale *** was a sale in gross and not a sale by the acre." The court, therefore, concluded that "plain-

tiffs, in the absence of fraud, do not have a cause of action for the deficiency in the number of acres conveyed by the defendants." Judgment in favor of defendants was granted.

In this appeal plaintiffs again raise a single issue—whether the sale of defendants' farmland was "in gross" or "by the acre."

The general rule of law controlling here is not disputed. Where the sale is "in gross"—for a lump sum regardless of the acreage—the vendor is not liable for any deficiency in the acreage except for fraud. (*Rotermund v. Lauritzen* (1922), 225 Ill. App. 170.) By contrast, where the sale is "by the acre," the vendor will be held liable for such deficiency. *Wadhams v. Swan* (1884), 109 Ill. 46.

 Contracts for sales of land in gross have been described as contracts of hazard and are not favored in the law. Where a farm is sold and described as containing any certain number of acres, a presumption arises that the sale is "by the acre" and not "in gross." This presumption is not lightly overcome and may be rebutted only upon clear and convincing proof that the parties intended it to be a sale "in gross." Where proof of the parties' intention is unclear or ambiguous, "the courts, not favoring contracts of hazard, will always construe the same to be contracts of sale per acre." (*Huffman v. Landes* (1934), 163 Va. 652, 659, 177 S.E. 200, 203.) Finally, where the number of acres is considered material by the parties, in that it affects the consideration agreed upon, a misrepresentation or mutual mistake of fact as to the acreage entitles the purchaser to a judicial remedy even though the sale was not technically "by the acre." *Paine v. Upton* (1882), 87 N.Y. 327.

██ We agree with the plaintiff that the trial court erred in its conclusion that the sale here was "in gross." Clearly, there were certain aspects of the sale that are characteristic of sales "in gross"—*i.e.*, the farm was offered as a single, undivided parcel, rather than separate tracts; a survey was not to be provided; and the caveat "more or less" appears to place the risk of an acreage discrepancy on the purchaser. Nonetheless, we do not find these aspects sufficiently probative of the parties' intent to overcome the presumption that the sale in this case was "by the acre." The number of acres—129, more or less—was clearly set forth in the defendants' notice of sale by public auction. Bidding was invited and cast on a per-acre basis. Thus, the full sale price of $336,690 was never bid as such, but was later determined by multiplying 129 acres times the plaintiffs' high bid of $2610 per acre. Prior to the closing, plaintiffs demanded a reduction in the sale price to reflect an acreage deficiency. On these facts it must be concluded that the number of acres was

considered material by the contracting parties.

The language "more or less" in the description of the land does not transform a sale by the acre into one "in gross." "More or less" is language of precaution used in deeds to cover slight and unimportant inaccuracies such as those incident to measurement by different surveyors and variations in the instruments used. (*Koch v. Bird* (1913), 174 Mich. 594, 140 N.W. 919.) In the present case, the deficiency comprises approximately six acres and results from various causes, including adverse possession and a deed overlap. Under the facts and circumstances presented here, we cannot say that defendants have established by clear and convincing proof that both parties intended a sale "in gross" rather than "by the acre."

Next, defendants argue that plaintiffs are precluded from recovery of damages by operation of the doctrine of merger. While defendants' argument is not without merit, we must reject the broad sweep of this contention. The doctrine of merger operates so as to extinguish a remedy at law for a deficiency in acreage where a party affirms a contract by accepting a deed and then attempts to sue for damages based on a breach of the terms of the underlying contract. The doctrine is not a popular one with modern courts. Exceptions have been carved where the executory contract contains provisions collateral to and independent of the provisions in the subsequent deed. Such provisions, it has been held, do not merge in the deed. (See *Harris Trust & Savings Bank v. Chicago Title & Trust* (1980), 84 Ill. App. 3d 280, 284, 405 N.E.2d 411, 414 (and cases cited therein).) The doctrine also has been held not to apply where a sale of real estate by the acre is consummated by delivery of a deed and the evidence clearly and convincingly proves that a misrepresentation, whether innocent or not, or mutual mistake as to the acreage to be conveyed existed when the deed was delivered. See *Bicknell v. Barnes* (1973), 255 Ark. 697, 501 S.W.2d 761 (suit by purchaser for reformation of deed and adjustment in purchase price sustained on ground of mutual mistake); see also *Jensen v. Miller* (1977), 280 Or. 225, 570 P.2d 375 (countersuit by purchaser for reformation of deed survived defense of merger because " 'doctrine of merger should operate only where it is reasonable to assume that the parties contemplated the extinction of their contractual rights and duties upon the execution of the deed.' " 280 Or. 225, 231, 570 P.2d 375, 378).

In the instant case, it is not disputed that the survey, which disclosed the various acreage deficiencies, was not completed until after the defendants had delivered the deed. In ruling on the parties' motions for summary judgment, the trial court found "[t]hat there is no

question of fraud or fraudulent misrepresentation; [t]hat all parties *** agreed in good faith; [and] [t]hat the parties knew the parcel involved." Although it appears that plaintiffs had knowledge prior to the closing date that some discrepancy in the acreage existed, there is no indication in the record before us that any of the parties were aware both that the quarter section in which the parcel lay was short by 4.03 acres and that adverse possession had affected title along the farm's southern and eastern boundaries as legally described.

■■ In our opinion, the evidence of record is sufficiently clear and convincing to establish that the parties were mutually mistaken as to the parcel's acreage when the deed was transferred in 1983.

■■ We note in passing that plaintiffs have labeled their complaint as an action at law. For reasons not explained in the record, plaintiffs have not sought reformation of the deed warranting good and clear title to the entire premises as legally described. It would appear to us that such relief would be desirable. Nonetheless, the damages prayed for in the complaint are limited to the acreage deficiency times $2610, the per-acre price paid for the parcel. Since Illinois law, in a suit by the seller for the purchase price, will permit a setoff, or recoupment, of a deficit at the contract price (*Wadhams v. Swan* (1884), 109 Ill. 46), a cause of action brought by the purchaser based on a breach of contract for return of the excess purchase price on grounds of misrepresentation or mutual mistake may be maintained as well. See Restatement (Second) of Contracts secs. 152, 158 (1984); R. Cunningham, The Law of Property sec. 10.3 (1984); *cf. Meyer v. Ranson* (1967), 80 Ill. App. 2d 175, 224 N.E.2d 293 (wherein, on similar facts, defendant's claim for judgment based on mutual mistake was rejected without discussion of the applicable measure of damages because the court held that the parties had contracted the sale ("in gross") of an entire parcel described by metes and bounds).

Further, we deem it appropriate to address a factual matter which has not been raised by either party to this appeal. The actual deficiency in acreage as assessed by the surveyor, Mr. Vegrzyn, appears to be 5.995 acres. The surveyor's certificate establishes that the total acreage as legally described is 127.143 acres. For various reasons, including, as aforesaid, a deed overlap and uneven fence lines that have resulted in adverse possessions, calculation of the area actually conveyed to the purchasers requires that 4.25 acres be subtracted out and that .112 acres be added back in. By our calculation, it appears that the acreage conveyed to plaintiffs is 123.005,

and not 122.97 as stated by plaintiffs on appeal. We note that the trial court's finding of fact on this matter coincides with plaintiffs' assertion of a 6.03 deficiency, but that the error resulted from a miscalculation during the deposition of surveyor Vegrzyn. The record discloses that the calculation was corrected by the surveyor before the transcript of his testimony was filed in court by plaintiffs in support of their motion for summary judgment. Defendants assert on appeal that a "six-acre deficiency" is insignificant, but they do not address the question of fact.

Also, the exact acreage affected by adverse possession along the farm's eastern boundary is unclear from the affidavits of record. Both additions to and subtractions from the acreage conveyed along the eastern border are at issue. It appears that one adjoining landowner along this side has been in possession for more than 20 years, and the other, for less than 20 years. Clearly, it is plaintiffs' burden to prove the exact acreage deficiency for which damages are claimed. We are unable to state at this juncture that plaintiffs have borne their burden of proving damages.

In sum, we hold that the sale of defendants' farm here is deemed to be a sale "by the acre." The parties do not contend on appeal that there are any other disputed issues of fact that would preclude the entry of summary judgment for plaintiffs, and we find that the evidence of record is sufficient to entitle plaintiffs to relief for the acreage deficiency as a matter of law. However, there appears to be no agreement by the parties on the issue of the precise acreage conveyed to plaintiffs. Accordingly, we remand this cause to the trial court for further proceedings consistent with this opinion.

Reversed and cause remanded.

SCOTT, P.J., and STOUDER, J., concur.